UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 4:17-cr-108-BHH |
|               Plaintiff/Respondent, | Civil Action No. 4:20-cv-962-BHH |
| vs. | **OPINION AND ORDER** |
| BARBARA LANDY, | |
|               Defendant/Movant. | |

This matter is before the Court upon Defendant/Movant Barbara Landy's ("Landy") motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1986). For the reasons set forth below, Landy's motion is denied and the Court grants summary judgment in favor of the United States of America ("Government").

## BACKGROUND

Barbara Landy, a/k/a "E-5," a/k/a "Fizzy," was a supervising member of the Billie East Side Bloods set ("Billies") of the United Blood Nation, a national criminal organization, or gang, that generated revenue by selling illegal narcotics and by engaging in other criminal activities. (PSR ¶¶ 2, 74, ECF No. 1782.) The Billies operated primarily in the eastern portion of the District of South Carolina, including the Florence and Myrtle Beach areas. Members of the Billies carried, used, possessed, and sold firearms to facilitate their drug trafficking enterprise. Firearms allowed Billies members to not only protect illegal drugs they possessed for the purpose of distribution and money Billies members made from the distribution, but they also allowed Billies members to protect

1

geographic areas they inhabited from intrusion from rival gangs or other drug trafficking organizations who sought to compete with the Billies for drug sales. (PSR ¶ 2.)

In addition to using firearms to injure or kill members of rival gangs or DTOs, members of the Billies also used firearms to generate more revenue they used to purchase more illegal drugs for distribution. For example, Billies members often sold firearms and used the proceeds from these sales to purchase more illegal drugs that members could distribute. Billies members also committed robberies and used proceeds from these robberies to purchase more illegal drugs that members distributed. (*Id.*)

Upon gathering information from wiretaps, traffic stops, monitored drug buys, and statements from confidential sources, Landy was identified as a leader within and drug distributor for the Billies. Landy had several members of the gang working for her distributing heroin to include Frank Truitt, a/k/a "Fatz"; Joshua Lee Randall, a/k/a "Rude Boy"; Adrian Jerell Lane, a/k/a "Ace"; Spencer Johnson, a/k/a "Oz", a/k/a "Almighty"; and Desman Earl Kishawn Chestnut, a/k/a "D-Nice." As a leader within the gang, Landy received a larger share of the drug proceeds. Landy also possessed firearms during her drug distribution activities. Several government witnesses stated they observed Landy in possession of a firearm while in possession of drugs. Additionally, Landy threatened a cooperating witness to return heroin that belonged to her. As part of Landy's involvement in the drug trafficking organization, she was held accountable for 1,952 grams of heroin for purposes of calculating her advisory sentencing guidelines. (PSR ¶ 74.)

On February 15, 2017, Landy was indicted by a federal grand jury for several narcotics and weapons violations. (ECF No. 3.) Two superseding indictments followed. On November 15, 2017, pursuant to a written plea agreement, Landy pleaded guilty to

2

Count 1 (Conspiracy to Possess with the Intent to Distribute and To Distribute 100 Grams or More of Heroin) and Count 2 (Conspiracy to Use, Carry, During and In Relation To, and Possess Firearms in Furtherance of a Drug Trafficking Crime) of the Third Superseding Indictment. (PSR pp. 1–2.) On March 13, 2019, the Court sentenced Landy to 210 months as to each of Counts 1 and 2, to run concurrently, followed by 4 years (aggregate) of supervised release. (ECF Nos. 1771, 1781.) Landy did not file a direct appeal.

On March 6, 2020, Landy filed the instant § 2255 motion, seeking relief based on her assertions that her retained counsel, Roy Stephen Merritt, was ineffective at her sentencing proceeding and failed to file an appeal on her behalf. (*See* ECF No. 1986.) Landy retained Mr. Merritt and local counsel Ralph Wilson, Sr., to represent her after her prior attorney withdrew due to a conflict of interest. (*See* ECF No. 2045.) Both Mr. Merritt and Mr. Wilson filed affidavits in response to Landy's claims. (ECF Nos. 2028, 2045.) The Government file a response in opposition and motion for summary judgment on October 28, 2020. (ECF No. 2066.) These matters are ripe for review and the Court now issues the following ruling.

## LEGAL STANDARDS

### Motions to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255

A prisoner in federal custody may attack the validity of his sentence pursuant to 28 U.S.C. § 2255 by filing a motion in the court that imposed the sentence. To succeed on such a motion, the prisoner must prove one of the following: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized

3

by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

The district court need not hold an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The determination of whether to hold an evidentiary hearing ordinarily is best left to the common sense and sound discretion of the district court. *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970). "When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Rule 12, Rules Governing Section 2255 Proceedings ("The Federal Rules of Civil Procedure . . ., to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The evidence must be viewed in the light most favorable to the non-moving party, with all reasonable inferences drawn in that party's favor. The court therefore cannot weigh the evidence or make credibility determinations." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 413 (4th Cir. 2015) (internal citations and quotation marks omitted).

4

**Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The U.S. Supreme Court has held that this right is violated when counsel retained by, or appointed to, a criminal defendant fails to provide adequate or effective legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). *Strickland* established a two-prong test for a claim of ineffective assistance of counsel in violation of the Sixth Amendment, under which the criminal defendant must show deficient performance and resulting prejudice. *Id.* at 687. "The performance prong of *Strickland* requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and courts should indulge in a "'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (modifications omitted) (quoting *Strickland*, 466 U.S. at 689–90). "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694). "In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington v. Richter*, 562 U.S.

5

86, 111 (2011) (citations omitted). Rather, "*Strickland* asks whether it is 'reasonably likely' the result would have been different." *Id.* (citing *Strickland*, 466 U.S. at 693). Furthermore, "When analyzing counsel's performance at sentencing, prejudice exists when, but for counsel's action or inaction, the movant would have received a shorter sentence." *Jennings v. United States*, 461 F. Supp. 2d 818, 823–24 (S.D. Ill. 2006) (citing *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Strickland*, 466 U.S. at 689).

## DISCUSSION

### A. Whether Counsel Was Ineffective for Failing to File an Appeal

In Ground One of her § 2255 motion, Landy alleges that her counsel failed to "properly consult and file an appeal on [her] behalf." (ECF No. 1986 at 4; ECF No. 1986-1 at 1–2.) Landy avers that she was not pleased with her sentence, that she believes there was a breach "between the agreement quoted to her by her counsel and the government," that "a sentence of 11 1/2 years was quoted to her . . . if [she] ceased arguing against the PSR and its information," and "[o]nce she arrived at sentencing, those promises changed and counsel should have proceeded with objecting to the statements and enhancements made in the PSR that were uncorroborated, unreliable, and incredible." (ECF No. 1986-1 at 1–2.) For these reasons, Landy asserts counsel should have "properly consult[ed] with [her] and inform[ed] her of the advantages and disadvantages of filing an appeal," but did not do so. (*Id.* at 2.)

In his responsive affidavit, Mr. Wilson states:

> That Defendant Landy was informed of her Waiver of Rights to appeal both before her Plea Agreement and again after her Sentencing. At NO time did Defendant Landy request an appeal of any type, either after her Plea or Sentencing. After Defendant Landy's Sentencing, both Attorney Merritt and I went into the Marshalls lock-up and met with Defendant Landy to explain

6

her Sentence to her and her right as far as any appeal. Defendant Landy never requested an appeal.

(Wilson Aff. ¶ 6, ECF No. 2028.) For his part, Mr. Merritt states:

> Attorney Ralph Wilson, Sr. and I met with the Defendant Landy in the US marshals holding area where she was being held immediately after the sentencing hearing. We informed Defendant Landy of her right to file an appeal within 14 days. We answered any questions that Defendant Landy had. After discussions with myself and Attorney Ralph Wilson, Sr. Defendant Landy said that she did not want to appeal from her sentencing hearing. I was not contacted within the remaining time for appeal . . . nor informed by Defendant Landy or anyone acting on her behalf that Defendant Landy had changed her mind and wanted to appeal.

(Merritt Aff. ¶ 3, ECF No. 2045.)

> Paragraph 10 of Landy's plea agreement states:

> The Defendant is aware that 18 U.S.C. § 3742 and 28 U.S.C. § 2255 afford every defendant certain rights to contest a conviction and/or sentence. Acknowledging those rights, the Defendant, in exchange for the concessions made by the Government in this Plea Agreement, waives the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255. (This waiver does not apply to claims of ineffective assistance of counsel or prosecutorial misconduct raised pursuant to 28 U.S.C. § 2255, or future changes in the law that affect the defendant's sentence.) This Agreement does not affect the rights or obligations of the Government as set forth in 18 U.S.C. § 3742(b). Nor does it limit the Government in its comments in or responses to any post-sentencing matters.

(ECF No. 1056 at 9–10.) Landy has not produced any evidence or argument to show that the appellate waiver in her plea agreement is unenforceable.

The Court finds that Landy has not demonstrated deficient performance or prejudice under *Strickland* for her counsel not filing an appeal where her plea agreement included a valid appellate waiver and she did not request that an appeal be filed. On March 13, 2019, the Court conducted Landy's sentencing hearing. The Court acknowledged the appellate waiver in the plea agreement, stated the limited situations in

which the waiver would not apply, indicated that any notice of appeal on those limited claims had to be filed within fourteen days of the entry of judgment, advised Landy that the Court would appoint her a lawyer to handle her appeal if she could not afford one, and instructed her two trial defense counsel to consult with her about her right to appeal. (Sentencing Tr. p. 48, ECF No. 2049.) Landy has not demonstrated a genuine issue of material fact to survive summary judgment on this aspect of her ineffective assistance of counsel claim and the motion to vacate her sentence on this basis is denied.

**B. Whether Counsel Was Ineffective for Failing to Object to the PSR**

In Ground Two of her motion, Landy alleges that her "counsel failed to object to the PSR." (ECF No. 1986 at 5; ECF No. 1986-1 at 2–3.) She argues that she discussed with her counsel "discrepancies" in the PSR that resulted in an increased guideline range, that the enhancements were based on statements from culpable co-conspirators, that counsel explained if she ceased fighting the PSR the Government would "move for a sentence of 11 1/2 years" but later indicated that "the prosecutor would be pursuing a sentence of 17 1/2 years," and that counsel told her she did not qualify for the First Step Act and "there was no reason to pursue the objections or speak with the court regarding certain departures that may be applicable[.]" (ECF No. 1986-1 at 2–3.) Landy further argues that counsel's "failure to object to the statements, inform the court of the government's promise, and properly provide information concerning her eligibility under the First Step Act shows that counsel's performance certainly f[ell] below a reasonable standard and prejudiced Landy." (*Id.* at 3.)

In his responsive affidavit, Mr. Wilson states:

That the evidence in this case was substantial and overwhelming as to

Defendant Landy's guilt and complicity. Further, the evidence clearly exposed Defendant Landy as a leader if not "The Leader" of this crime organization.

That prior to Defendant Landy's Plea, I, Ralph J. Wilson, Sr., specifically talked to Defendant Landy about relevant conduct, Defendant Landy's position as a possible King Pin or Leader, and the possession or use of a weapon during these drug charges would affect Defendant Landy's sentence, but that we could not determine the actual sentence range until the Pre-Sentence Report (PSR) was issued. It was also explained to Defendant Landy that once the PSR was issued, I would, and did, meet and go over it with Defendant Landy to discuss material inaccuracies and make any necessary objections.

(Wilson Aff. ¶¶ 3–4.) Mr. Merritt states:

A response to the Presentence Report containing all objections known to me at the time was prepared by me, on behalf of Defendant Landy, and sent to Attorney Ralph Wilson's office for filing[.]

. . . .

The objections that Defendant Landy had to the Presentence Report (hereafter PSR) were set out therein and were also argued to the court during Defendant Landy's sentencing hearing.

(Merritt Aff. ¶¶ 9, 11.) As to any alleged promise by counsel or the Government regarding

an eleven-and-a-half-year sentence, Mr. Wilson states:

[A]t no time did I, or Attorney Merritt in my presence or to my knowledge, tell Defendant Landy she would get an eleven and a half (11 ½) year sentence. Certainly, Counsel did try to plea bargain with the government for a reduced sentence, but Defendant Landy refused to cooperate in any meaningful way.

(Wilson Aff. ¶ 10.) Mr. Merritt states:

No mention of any broken promises by the government was made by Defendant Landy during her discussions with me and Attorney Ralph Wilson, Sr.

On more than one occasion it was explained to Defendant Landy that in order to get a reduced sentence as part of any agreement with the government, that she would have to cooperate and give information that

would be of substantial assistance to the government.

The government did make a plea offer. However, Defendant Landy failed to live up to the requirements of said plea offer.

This arrangement required Defendant Landy's cooperation with the government. Defendant Landy agreed to meet with FBI agents involved in this prosecution. At the time when the FBI agents arrived to meet and talk to Defendant Landy [she] had changed her mind and would not talk to them.

There was no broken promise by the government in this matter. Furthermore, even if an appeal had been filed, this issue would not have been raised on appeal by this Counsel.

(Merritt Aff. ¶¶ 4–8.) With regard to the applicability of the First Step Act's expansion of

the Safety Valve for first time offenders, Mr. Merritt states:

I discussed the First Step Act with Defendant Landy and brought up that possibility with Andrew Moorman, the prosecuting attorney in Defendant Landy's case. The government was not agreeable with applying the First Step Act in Defendant Landy's case given her refusal to cooperate with the government in providing information regarding the drug conspiracy. I do not recall telling Defendant Landy that the First Step Act did not apply to her. The court was aware that this was Defendant Landy's first offense.

(Merritt Aff. ¶ 17.)

Paragraph 5 of Landy's plea agreement states:

The Defendant understands that the matter of sentencing is within the sole discretion of the Court and that the sentence applicable to Defendant's case will be imposed after the Court considers as advisory the United States Sentencing Commission Guidelines, Application Notes and Policy Statements, as well as the factors set forth in Title 18, United States Code, Section 3553(a). The Defendant also understands that Defendant's sentence has not yet been determined by the court, and that any estimate of a probable sentencing range Defendant may have received from Defendant's attorneys, the Government or the United States Probation Office is only a prediction, not a promise, and is not binding on the Government, the Probation Office or the Court. The Defendant further understands that the Government retains the right to inform the Court of any relevant facts, to address the Court with respect to the nature of the offense, to respond to questions raised by the Court, to correct any inaccuracies or inadequacies in the presentence report, to respond to any statements made

to the Court by or on behalf of the Defendant and to summarize all evidence which would have been presented at trial to establish a factual basis for the plea.

(ECF No. 1056 at 9–10.) The plea agreement further states that "[t]he parties hereby agree that this Plea Agreement contains the entire agreement of the parties . . . and that any and all other promises, representations and statements, whether made prior to, contemporaneous with or after this Agreement, are null and void." (*Id.* at

The Court finds that Landy has not demonstrated deficient performance or prejudice under *Strickland* for her counsel failing to object to the PSR or failing to enforce a supposed promise for a particular sentence. Landy's counsel filed and argued several factual objections before her sentencing hearing. The Court heard testimony on these issues, heard argument from counsel, and then expressly denied each of her objections. Landy's complaints of additional objections not being filed are without merit.

The Revised Addendum to the Presentence Report dated March 13, 2019, states "On March 13, 2019, attorneys for the defendant, Roy Stephen Merritt and Ralph James Wilson, Sr., submitted the following objections to the presentence report on behalf of the defendant . . . ." (ECF No. 1782-2 at 1.) It goes on to analyze two categories of objections submitted by the defense: (1) the objection to the leadership enhancement (*id.* at 1–3) and (2) the objection to drug weight attributable to Landy (*id.* at 4–5). These objections specifically incorporated additional arguments concerning the threats Landy made, and other matters of which she now complains. (*E.g.*, *id.* at 2 ("[Landy] denies she made any threats . . . .").)

The sentencing transcript reflects that Mr. Merritt argued these objections in detail at the sentencing hearing. (*See, e.g.*, Sentencing Tr. pp. 3–4; 5–6 (counsel arguing

11

"Landy's position is that she was not a leader in this conspiracy" and against the "[drug] weight that's in the presentence report" based on "uncorroborated statements of codefendants" whose "motivation [was] to reduce their involvement").) The Government presented evidence through the case agent on both of these issues, and Landy's counsel extensively cross-examined the witness as to the credibility of the cooperator's statements. (*Id.* pp. 16–37.) After hearing this evidence, and argument from counsel, the undersigned expressly overruled Landy's objections, stating, "The evidence from the witness stand is overwhelming as to Ms. Landy's leadership role and as to the drug weight . . . ." (*Id.* p. 38.) The Court then discussed the evidence that applied to the enhancements. (*Id.* pp. 38–39.) The undersigned stated, "the objections are overruled and the Court is now adopting the presentence report in toto and I'm adopting each of the presentence report's findings in resolving all of the contested facts in favor . . . of the government." (*Id.* p. 39.) Simply put, Landy's argument that her counsel failed to properly object to the PSR finds no support in the record.

Likewise, Landy's assertion regarding her counsel's failure to object to the firearms enhancement (*see* ECF No. 1986-1 at 3–4) is unavailing. There was no reasonable ground upon which counsel could have objected to this enhancement given that Landy pleaded guilty to not only the drug conspiracy, but also to having conspired with others to use and carry firearms in furtherance of drug trafficking crimes. (ECF No. 1056 at 2.) She admitted to the elements of this offense, which included the "use, carry, or possess[ion]" of a firearm. (*Id*; *see also* PSR ¶ 91 (noting firearm enhancement is applicable based upon Landy's guilty plea).) Therefore, there was no good faith basis for her counsel to argue against the firearm enhancement and he cannot be found to have been ineffective

for not doing so.

Similarly, there was no basis for Landy's counsel to argue that the First Step Act's expansion of the Safety Valve should have applied to her. Mr. Merritt attests that he discussed the First Step Act with Landy and with the Assistant U.S. Attorney prosecuting Landy's case. (ECF No. 2045 at 4.) Merritt observes the Government would not agree to application of the First Step Act because Landy refused to cooperate and provide information about the drug trafficking conspiracy. (*Id.*) This is consistent with 18 U.S.C. § 3553(f)(5), which requires that in order to qualify for the Safety Valve, "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.]" Landy did not meet this "tell all" requirement because she refused to participate in a proffer interview with case agents. Moreover, even if she had complied with the "tell all" provision, Landy would not have qualified for the Safety Valve by virtue of any one of the following enhancements that she received: leadership, firearms, and violence or credible threats of violence. *See* 18 U.S.C. §§ 3553(f)(2) and (f)(4). Landy has not shown that her counsel was in any way deficient for failing to argue for application of the Safety Valve when record evidence reflects she would not have qualified for it.

For all of these reasons, there is no basis to conclude that Landy's counsel was ineffective in failing to argue or raise the objections of which she complains. Furthermore, Landy has not introduced evidence to countervail the plea agreement's crystal-clear statement that there was no agreement as to the sentence that would be imposed and that any estimate she may have received was a non-binding prediction, not a promise.

13

(*See* ECF No. 1056 at 9–10.) Therefore, her arguments on these issues fail as a matter of law.

### C. Impermissible Double Counting

In Ground Three of her motion, Landy contends that the firearm enhancement in her guidelines calculation amounted to "impermissible double counting." (ECF No. 1986 at 6; ECF No. 1986-1 at 3–4.) She argues that, whereas several witnesses provided statements that Landy possessed a weapon while distributing drugs, this fact was untrue and she was "not allowed to deny or determine whether these statements were given by credible witnesses." (ECF No. 1986-1 at 3.) She further argues that she "pled guilty to 924(o)," which "states that the conduct is an agreement to possess, use, or carry a firearm," whereas "2d1.1(b)(1) provides that one would actually have to possess, not agree to do so." (*Id.*)

Putting aside, for a moment, the fact that any freestanding claim of double counting was procedurally defaulted in this case, Landy's assertion that the application of the firearm enhancement here amounts to double counting is baseless. As explained above, Landy pleaded guilty to Count 2 of the Third Superseding Indictment—Conspiracy to Use, Carry, During and In Relation To, and Possess Firearms in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(o). (PSR p. 2.) In order to enter such a plea, a defendant must admit the second element of this offense, namely that the agreement/conspiracy at issue was to "use, carry, or possess a firearm, in furtherance of a crime of violence or drug trafficking crime." (ECF No. 1056 at 2.) As documented in the PSR, multiple witnesses stated that Landy was known to possess firearms in furtherance of her drug dealing activities. (*See* PSR ¶¶ 48 (stating Landy was known to possess an

14

AK-47, a Mac 10 machine pistol, and a double-barrel shotgun in "trap houses" for easy access and concealment from police), 69 (stating that Landy possessed a 9mm handgun during a particular heroin transaction in Myrtle Beach).) At sentencing, the Court received testimony that Landy was part of intercepted Billies gang communications wherein she was discussing firearms and the transportation of firearms, and that trafficking of firearms was a critical part of the gang's revenue. (Sentencing Tr. pp. 26–27.) In resolving Landy's objection to the leadership role enhancement, the Court found that the evidence in the case revealed "the Billies was a violent and aggressive narco trafficking gang that used . . . firearms for the purposes of distributing narcotics." (*Id.* p. 38.) Moreover, after receiving evidence at sentencing, the Court adopted the PSR in toto, including each of the PSR's findings in resolving all of the contested facts in favor of the Government. (*Id.* p. 39.) Landy possessed firearms in furtherance of the drug conspiracy to which she pleaded guilty, and she was a leader in a gang that trafficked firearms as one of its main sources of revenue. Accordingly, the firearm enhancement pursuant to USSG §2D1.1(b)(1) was appropriately applied to her guidelines calculation and her double counting claim would be without merit even it were not procedurally defaulted. The § 2255 motion to vacate on this basis is denied.

### D. Credible Threat Enhancement

In Ground Four of her motion, Landy asserts that the credible threat enhancement was inappropriately applied to her sentence. (ECF No. 1986 at 8; ECF No. 1986-1 at 4.) She asserts, "In the PSR, there were statements given that were uncorroborated and changed during the pre-sentencing process[,]" specifically, "[i]nitially Desmand Chestnut made statements that Landy was not present during the course of the robbery," but later

"[h]e recant[ed] his statements and change[d] it in a second interview with investigators." (ECF No. 1986-1 at 4.) She further asserts, "There is nothing in the PSR that provides that certain statements were to be considered a threat[,]" and "Landy was not there to hold o[r] direct anyone to hold another at gunpoint[,]" "[t]herefore, this two-level enhancement should have never been added[.]" (*Id.*)

In his responsive affidavit, Mr. Wilson states: "While Desm[a]nd Chestnut made statements and recants in part in a later statement, Chestnut still placed Defendant as a participant in the robbery." (Wilson Aff. ¶ 8.) Mr. Merritt notes: "Defendant Landy's objections on the credi[]ble threat enhancement were set out in the Response to the PSR." (Merritt Aff. ¶ 13.)

As with Landy's double counting theory, any freestanding claim that the credible threat enhancement was improperly applied in this case was procedurally defaulted because it was not raised on direct review. To the extent that Landy's claim alleges her counsel was ineffective for not objecting to this enhancement, or allowing its improper application in this case, that theory has already been addressed above. Counsel *did* object to a plethora of facts in the PSR, including the facts pertaining to threats, and Landy cannot show deficient performance or prejudice under *Strickland*. (*See* ECF No. 178-2 at 2.) Counsel clearly asserted that Landy denied making any threats and argued that it would not have made sense for Landy to openly reveal her intentions if she was truly planning to "take[] care of" witnesses as retribution for their cooperation against her. (*Id.*; *see* PSR ¶ 67.) The Court will once again note that when overruling the objections to the PSR the undersigned adopted all of the PSR's findings and resolved all contested facts in favor of the Government. (Sentencing Tr. p. 39.) This adoption included, for example,

16

the fact that after a cooperating witness was unable to reach Desmand Chestnut in order to purchase heroin, the witness went into Chestnut's garage and stole 15,000 slips of heroin, whereupon Landy contacted the witness's girlfriend and made threats in an effort to have them return the stolen heroin, which belonged to the distribution operation in which Landy was a leader. (PSR ¶¶ 64–65.) Suffice it to say, Landy's challenge to the credible threat enhancement is procedurally defaulted as a freestanding claim, cannot support an ineffective assistance of counsel theory, and fails on the merits in any event. The motion to vacate on this basis is denied.

### E. Inaccurate Statements Made by Counsel and Health Concerns

Although not expressly stated in the § 2255 motion as a ground for relief, Landy devotes an entire section of her attached memorandum to the assertion that inaccurate statements made by Mr. Merritt and his health condition "caused his performance to fall below a reasonable standard." (ECF No. 1986-1 at 5.) Landy asserts that "counsel's hands were constantly shaking and that he fumbled over his words on several occasions, which may have occurred on the record." (*Id.*) She further asserts that "counsel's shaking and fumbling were signs of illnesses that could have most definitely affected counsel's representation of her at critical times. It could have impaired his ability to properly strategize for Landy and caused her to receive a sentence of 210 months." (*Id.*) She also contends that because she had no prior criminal history, she qualified for the Safety Valve under the First Step Act, but "[t]here was nothing submitted to the court from counsel that would assist her in receiving a departure under the FSA. Counsel told her she was not eligible and Landy took his word as such." (*Id.*) Landy even speculates that Mr. Merritt was "working with the government and not for [her]." (ECF No. 1986-1 at 8.)

17

In his responsive affidavit, Mr. Merritt states:

That during my time representing Defendant Landy I did have several health issues, but believe that these health issues did not in any[ ]way materially interfere with my ability to represent Defendant Landy in a competent manner. Counsel does, on occasion, have a problem with his hands shaking to a minor degree but this would not interfere with his ability to competently represent Defendant Landy. I have no recollection of slurring my speech when meeting with Defendant Landy.

At the time of the sentencing hearing, I had discussed with Defendant Landy that I was requesting a continuance of her sentencing hearing because of health problems I was having.

A Motion to Continue was filed but said Motion was denied and, fortunately, arrangements with my wife's employer were able to be made for my wife to drive me down and I was able to participate in Defendant Landy's sentencing hearing.

I represented Defendant Landy to the best of my ability.

(Merritt Aff. ¶¶ 24–27.)

The Court finds that there is no basis to conclude that Mr. Merritt's health rendered his representation of Landy ineffective. Mr. Merritt admits that while representing Landy he had several health issues, but he attests those health issues did not materially interfere with his ability to represent Landy. The Court agrees. The undersigned had the opportunity to personally observe Mr. Merritt's behavior, thought processes, and representation of Landy in Court. Nothing in the record or in the undersigned's own observations gives any indication that Mr. Merritt's representation of Landy was deficient due to his health, or that the outcome of Landy's sentencing would have been different if counsel had been in better health. On the contrary, Mr. Merritt represented Landy zealously and with a reasonable degree of knowledge, skill, and ability.

Landy's generalized critique of Mr. Merritt's performance due to his health is

18

revealed as misguided by her repeated reliance on her supposed eligibility for the Safety Valve as evidence that counsel failed her. As explained above, Landy *did not* qualify for the Safety Valve because she refused to provide information about the drug distribution conspiracy, and because of her leadership role, possession of firearms in furtherance of the conspiracy, and engaging in credible threats of violence pertaining to the same.

Lastly, Landy cannot show any prejudice from Mr. Merritt's health conditions. Landy's theory of relief appears to be, at least in part, that if counsel had been in better health he would have done a better job of making objections, strategizing, and arguing at sentencing. However, at the conclusion of the sentencing hearing, the undersigned stated her belief that she calculated the advisory guideline sentencing range properly and correctly addressed all the points that had been raised, then went on to note that "if somehow it's later determined that I haven't, I'll say for the record now, I would have imposed this very same sentence as an alternate variant sentence in light of all of the 3553(a) factors and in light of the totality of the circumstances present in this case." (Sentencing Tr. p. 48.)

In sum, the record reflects no basis upon which to conclude that Mr. Merritt was ineffective by virtue of his health issues. For all of these reasons, Landy's § 2255 motion fails as a matter of law and the Government is entitled to summary judgment.

### F. Evidentiary Hearing

The Court finds that it is clear from the pleadings, files, and records of this case that Landy is not entitled to relief; thus, an evidentiary hearing is not necessary. *See* 28 U.S.C. § 2255(b); *Raines v. United States*, 423 F.2d 526 (4th Cir. 1970) (holding it is within the district court's discretion to deny without a hearing § 2255 motions where the

files and records conclusively show that the prisoner is entitled to no relief). Landy has

failed to set forth arguments that would merit a hearing. Accordingly, any implied request

for an evidentiary hearing is denied.

## CONCLUSION

For the reasons set forth above, Movant Landy's motion to vacate, set aside, or

correct a sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1986) is DENIED. Respondent

United States of America's motion for summary judgment (ECF No. 2066) is GRANTED.

CERTIFICATE OF APPEALABILITY

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the
> applicant has made a substantial showing of the denial of a
> constitutional right.

> (c)(3) The certificate of appealability . . . shall indicate which
> specific issue or issues satisfy the showing required by
> paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable

jurists would find this Court's assessment of his constitutional claims to be debatable or

wrong and that any dispositive procedural ruling by this Court is likewise debatable. *See*

*Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484

(2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard

for the issuance of a certificate of appealability has not been met. Therefore, a certificate

of appealability is denied.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

20

December 16, 2022
Charleston, South Carolina

*****

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure.